Weller *v.* Weller & Tr.

JONATHAN WELLER *v.* JOHN H. WELLER, and SENECA SMITH AND NATHAN J. SMITH, Trustees.

Where the real estate of a deceased person was, by the probate court, assigned to one of the heirs, on condition that he pay to the other heirs the amount of their shares in the estate, and he sold the estate to a third person, and the purchaser executed notes, payable to each of the heirs respectively, for the amount of the interest of each in the estate, and one of the heirs had become, by purchase prior to such assignment, the owner of the shares of two of his co-heirs, in addition to his own share, and had mortgaged the three shares, to secure a debt due from himself, and the purchaser of the estate subsequently, in pursuance of a decree of the court of chancery, in order to redeem those three shares from the mortgage incumbrance, paid more, than was their value at the time the mortgage was executed, it was held, that he was not chargeable, on trustee process, as trustee of the heir who was the equitable owner of the notes given for those three shares,— the facts showing, either an indirect payment of those notes, or a total failure of consideration.

But the principal debtor having also, prior to such assignment, bargained with another of the heirs to the estate for the purchase of the share of that heir, and having paid a portion of the purchase money, which share was not bound by the decree in chancery, and the purchaser of the whole estate having executed a note for the amount of that share, payable directly to the heir from whom the principal debtor purchased, it was held, that the principal debtor had a legal interest in that note, to the amount of the payment made by him upon his contract, and that for that amount the purchaser of the whole estate was trustee of the principal debtor.

In this case it also appeared, that one of the two heirs, whose shares the principal debtor had purchased and paid for before the execution of the mortgage, was indebted to the trustee, and that the note made payable to that heir by the trustee contained a proviso, that the amount of the indebtedness of such heir to the trustee, at the time the note became payable, should be deducted from the amount of the note; and, that note having been in effect vacated by performance by the trustee of the decree of the court of chancery, it was held, that the trustee was not entitled to offset the amount of the indebtedness of such heir against the funds in his hands belonging to the principal debtor,—his claim therefor, if any existed against the principal debtor, being of mere equity cognizance.

And it was also held, that he could not offset against the funds in his hands the payment of either debt or cost made by him to the orator in the bill in chancery.

Weller *v.* Weller & Tr.

Payments, made by the trustee to the principal debtor, or transactions in the nature of payment, come within the fifth section of chapter twenty nine of the Revised Statutes, and must have been made prior to the service of the process upon the trustee, or in good faith and in ignorance of such service; but independent claims in favor of the trustee against the principal debtor are within the thirty fifth section of the same chapter, and have no reference to the time of service of the process, unless they arose from voluntary advances made by the trustee to the principal debtor after the service of the process, or from other transactions, intended to render the creditor's attachment less beneficial to him; and when such independent claims are set up by the trustee, and there is no proof of fraud, the court will not presume fraud, nor require the trustee to negate fraud, but will allow him to retain for such claims from the amount in his hands.

In this case the note executed by the trustee to the principal debtor contained a proviso, that the amount of the principal debtor's indebtedness to the trustee, at the time the note arrived at maturity, should be deducted, as part payment, from the amount of the note; but, the note having become wholly extinguished, by payment by the trustee of the amount due by the decree in chancery, it was held, that the proviso to the note was no longer in force, and that, the principal debtor being indebted to the trustee, and it not appearing affirmatively that such indebtedness accrued in any fraudulent manner, as against the attaching creditor, the trustee was entitled to retain from the amount of funds found in his hands the amount of such indebtedness.

It is sufficient, in order to hold a trustee, under the statute relative to trustee process, that the claim upon the trustee was a legal debt by contract, that it belonged to the principal debtor, and that he had a right to have it enforced by an action at law, if necessary.

A claim in favor of the trustee against the principal debtor, which is of mere equitable cognizance, and which can only be enforced in a court of chancery, cannot be offset by the trustee against the funds of the principal debtor found in his hands.

TRUSTEE PROCESS.    The writ was served upon the trustees April 13, 1839.    Judgment having been rendered against the principal debtor by default, the trustees appeared and filed their joint disclosure, in which they set forth the facts substantially as follows.

John H. Weller, Harry Weller, Nathan Weller, Jr., Jonathan Weller and Catharine Warden were heirs of the estate of Nathan Weller, deceased.    On the 28th day of December, 1829, Nathan Weller, Jr., by deed, conveyed all his interest in the estate to John

H. Weller, and the said John H. also purchased all the interest of Harry Weller in said estate, and also contracted with Hiram Warden and his wife, the said Catharine Warden, for the purchase of the interest of said Catharine in the estate, and, about the 17th day of March, 1838, paid to Hiram and Catharine Warden $116,00 towards said purchase, and agreed to pay to them such sum, in the whole, as the interest of said Catherine in the estate should be appraised at. The interest of said Catherine was afterwards appraised at $133,33, leaving a balance due from said John H. to said Hiram and Catherine of $17,33, which sum has never been paid.

On the first day of April, 1839, the probate court for the district of Rutland, upon due proceedings previously had, ordered that the whole of the said estate should be set to Jonathan Weller, he paying the other heirs for their respective portions in the estate. On the 28th day of March, 1839, Jonathan Weller, by deed with certain conditions, conveyed to the trustees the whole of the estate, and, as a part of the same transaction, the trustees executed to each of the heirs of the said Nathan Weller a note for the amount of his, or her, interest respectively in the estate, and the said notes were, by order of the Probate Court, deposited with one John Vail. Among the notes thus executed was one payable to Harry Weller, on or before July 1, 1847, for $266,66, with annual interest from the first day of May, 1839,—the amount which the said Harry might owe the said trustees to be deducted; also a note to the said John H. Weller, for the same sum, payable July 1, 1846, subject to a like condition, that whatever the said John H. might owe the said trustees should be deducted from said note; also a note for the same sum and subject to a like condition, payable, July 1, 1849, to Nathan Weller, Jr.; and the said John H. Weller assented to the execution of these three notes, and accepted the same. The trustees also, as part of the same transaction, executed a note on the same interest, payable, July 1, 1843, to the said Hiram Warden and Catharine Warden, for $133,33, being the amount at which the said Catharine's interest in the estate was appraised, and the said John H. assented thereto. And the trustees disclosed, that the said John H. Weller was indebted to them at the time of disclosure, including interest to July 1, 1840, in the sum of $66,49, and that Harry Weller was also indebted to them in the sum of $66,54.

8

On the seventh day of August, 1834, John H. Weller, being indebted to one Thomas McDaniels, executed to him a mortgage deed of a portion of the real estate of the said Nathan Weller, deceased, describing it as being the land which descended to John H. Weller, Nathan Weller and Harry Weller from their father, the said Nathan Weller, deceased, which said mortgage deed was subsequently assigned to one James McDaniels. After the execution of the notes, above described, by these trustees, James McDaniels instituted proceedings in the court of chancery against John H. Weller, Nathan Weller, Jr., Harry Weller, Jonathan Weller, Hiram Warden, Catharine Warden, John Vail and these trustees, for the purpose of foreclosing the said mortgage, and he eventually obtained a decree, that John H. Weller, Jonathan Weller and these trustees should, by a day fixed, pay the amount due on the mortgage, being $1124,68, and costs taxed at $129,94, and, in default of payment, that these trustees should execute to him a sufficient deed of conveyance of the premises, and that the said John H. and Jonathan should pay the said costs.

Subsequent to the execution of the said notes, the trustees paid to Jonathan Weller the full value of the entire estate, and received from him a warranty deed of the same, without condition, and proceeded and made valuable improvements thereon. The value of the three shares in the estate, mortgaged by John H. Weller to McDaniels, was, at the time the mortgage was executed, less than the amount of the debt secured by the mortgage, being only $800, and the trustees, in pursuance of the decree of the court of chancery, paid to McDaniels the whole amount due by the decree, with costs and interest, being in the whole $1315,99.

The trustees claimed to be allowed to retain, out of any funds which the court might, on these facts, decide to be in their hands, the sum of $66,49, above mentioned as due from John H. Weller to them, also the sum of $66,54, above mentioned as due from Harry Weller to them, also the amount paid by them as costs of the proceedings in chancery, and also the loss and damage, which they had incurred in consequence of being compelled to pay the amount found due upon the mortgage.

The county court,—WILLIAMS, Ch. J., presiding,—decided, that the trustees were chargeable, to the amount paid by the principal

debtor to Hiram and Catharine Warden, in part payment for her interest in the estate of Nathan Weller, being $116,00, and also decided, that the trustees could not offset thereto their account against Harry Weller, nor their account against the principal debtor, nor the amount of costs paid by them.  To this decision the trustees excepted.

*S. H. & E. F. Hodges* for trustees.

I.  Against the funds found by the court below in the hands of the trustees, the trustees desired to set off,—1, The debt due to them from John H. Weller, being 66,49 ;—2, The debt due to them from Harry Weller, being $66,54, for which we contend John H. has made himself liable ;—3, The bill of cost in the suit in chancery, which it was decreed John H. should pay, and which the trustees have been compelled to liquidate for him ; *Smith* v. *Stearns*, 19 Pick. 20 ;—4, We also submit, that the trustees, by paying the mortgage of McDaniels, were substituted in his place and have a right to set off the debt secured against the sum with which they are charged.  They were justified in making the improvements, to save which they were compelled to pay the decree.

II.  The trustees insist, however, that they were never chargeable.

1.  Until John H. Weller had completed his contract with the Wardens, and had paid them, he could maintain no action against them,—much less against the trustees upon the note.

2.  Had he paid the Wardens in full, that did not entitle him to maintain an action against the principal debtors at law, even in the name of the Wardens, until they had explicitly assented to it.

3.  Even then he could not sue in his own name, without an express promise by the trustees to pay him ; and the trustees cannot be held chargeable, until an action at law can be maintained against them in the name of the principal debtor.  *Hoyt* v. *Swift et al., Tr.,* 13 Vt. 129.  *Brigden* v. *Gill et al. & Tr.,* 16 Mass. 522. *White* v. *Jenkins et al., Tr.,* 16 Mass. 62.  *Ins. Co.* v. *Weeks & Tr.,* 7 Mass. 439.  *Chealy* v. *Brewer et al., Tr.,* 7 Mass. 259. *Meacham* v. *McCorbitt,* 2 Metc. 352.

*J. C. Dexter* for plaintiff.

1.   The plaintiff claims, that John H. Weller has a claim, if not at law, in equity, on the note executed by the trustees to Hiram Warden and Catharine Warden, for the amount paid by him towards the contract for the purchase of the share of Catharine Warden in the estate of Nathan Weller.   A claim in equity, as well as at law, may be attached and held by the trustee process.

2.   The trustees claim, that John H. Weller is indebted to them, including interest to Jan. 1, 1840, in the sum of $66,49; but they have not disclosed, that he was indebted to them at the time this process was served upon them, and the court will not presume that such was the fact.

3.   The trustees were at liberty to redeem, or not, the shares mortgaged to McDaniels, and they have no claim for the costs, &c., paid by them.

The opinion of the court was delivered by

Royce, J.   The trustees now before the court, in payment for the estate of Nathan Weller the elder, which they purchased of Jonathan Weller, executed their promissory notes, which were lodged in the hands of Vail by order of the judge of probate, and made payable to the heirs respectively, for the value of their several shares in that estate.   Among those heirs were John H. Weller, (the principal defendant) Harry Weller, and Nathan Weller the younger.   The shares of the two latter had been purchased and paid for by John H. Weller, before the estate was set to Jonathan Weller by the court of probate.   Consequently, John H. had the legal property and right of action in the note made payable to himself, and became substantially the owner of those made payable to his brothers, Harry and Nathan.   But as the shares of those three persons were bound by the decree in chancery in favour of McDaniels, and the trustees had paid more than their value to redeem them, it was rightly decided that these notes no longer constituted any indebtedness against the trustees.   And it is not material, for the present purpose, whether the decision went upon the ground of an indirect payment of the notes in redeeming the shares, or on the ground of a total failure of consideration.

Among the notes, so executed by the trustees, was also one made

payable to Hiram and Catharine Warden for the sum of one hundred and thirty three dollars and thirty three cents, that being the value of said Catharine's share in the estate. John H. Weller had also contracted to purchase that share, and had paid to Warden and wife one hundred and sixteen dollars towards it. That share, not being bound by McDaniels' decree, was held by the trustees in an unincumbered state, by force of the conveyance from Jonathan Weller to them, and continued to form a valid consideration for this last note. By this note they are still indebted, and the question is, whether the debt, or a portion of it, is due in such a sense to John H. Weller, that they can be adjudged his trustees.

It has long been the settled doctrine in this state, that, to render a person liable as trustee under this kind of process, on account of rights or credits in his hands, it is necessary that he should be legally indebted to the principal defendant, or indebted by some legal demand belonging to him. *Sargeant* v. *Leland,* 2 Vt. 277 ; *Hutchins* v. *Hawley & Tr.,* 9 Vt. 295. It has been considered, that the attaching creditor was merely enabled to avail himself of the defendant's legal rights in relation to the trustee, and hold him liable for such demands, only, as the defendant could have enforced by an action at law. 9 Vt. 295 above cited ; *Baxter & et al.* v. *Currier & Tr.,* 13 Vt. 615. It is even said incidentally, in *Hoyt* v. *Ball & Tr.,* 13 Vt. 129, that the demand must be one which the defendant could have prosecuted in his own name. But this, I apprehend, cannot be received as a rule of universal application. For it was decided in *Newell* v. *Adams,* 1 D. Chip. 346, (and the doctrine has never been changed,) that after a *bona fide* assignment of a demand not negotiable, and due notice thereof given, the debtor could not be charged as the trustee of the assignor. He must, then, be capable of becoming the trustee of the assignee, or else the assignment of such a demand places it beyond the reach of the trustee process. Hence it has been sufficient, under all our trustee statutes, that the claim upon the trustee was a legal debt by contract,—that it belonged to the principal defendant,—and that he had a right to have it enforced by an action at law if necessary. And if an action by him might be defeated by reason of fraud between himself and the trustee, that difficulty is removed, in favor of the attaching creditor, by chap. 29, sec. 34, of the Revised Statutes. Now

the note last mentioned is a legal demand against the trustees, and is chiefly owned by John H. Weller, the defendant. Had the money been paid upon it into the hands of Vail, he would not have been justified, if fully apprised of the facts, in paying the defendant's share over to Warden and wife. And in respect of his interest in the note, the defendant might doubtless have required it to be prosecuted for his benefit. Upon these views, in which we are substantially supported by the case of *Camp* v. *Scott & Tr.*, 14 Vt. 387, we consider that the makers of the note are liable to this process, as trustees of the present defendant.

The next inquiry is, whether the trustees are entitled to retain for all or any of the claims set up in their disclosure. The claim to be subrogated to the original rights of McDaniels, as against this defendant, is clearly of equity jurisdiction, and could not be enforced by any known action at law. And the same is manifestly true of the demand against Harry Weller, when treated as in any sense the debt of this defendant. Nor is it perceived that the payment of McDaniel's bill of cost, under the circumstances attending it, could legally be treated as a payment of the defendant's debt upon his express or implied request. But the reasons assigned by COLLAMER, J., in *Hoyt* v. *Ball & Tr.*, to show that the creditor cannot, by this process, pursue a mere equity claim against the trustee, are equally applicable, when such a claim is asserted by the trustee against the defendant. The powers of a court of law, under the statute, are alike inadequate to the purposes of complete justice in both cases. The consequence is, that these several claims, being of equity cognizance, if sustainable at all, were properly disallowed by the county court.*

---

*The legislature have enlarged the range of the trustee process by the Statute of November 5, 1845, by which it was enacted, that " Section four of ' chapter twenty-nine of the Revised Statutes shall be so construed, as to ex- ' tend to and embrace whatever any trustee may have in his hands, or posses- ' sion, which he holds against law and equity." The section refered to is in these words,—" Every person, having any goods, effects, or credits, of the ' principal defendant, intrusted or deposited in his hands or possession, or ' which shall come into his hands or possession after the service of the writ ' 'and before disclosure is made, may be summoned as a trustee, and such ' goods, effects and credits shall thereby be attached and held to respond

Weller *v.* Weller & Tr.

The remaining claim is a debt in favor of the trustees directly against the defendant. And the ground of its disallowance in the court below must have been, either that it could only be applied in part payment of their note to the defendant,—or because it did not appear to have been contracted before the service of this process. It is true, that the note contained a provision, that whatever sum the defendant might be owing the trustees, when the note came to maturity, should be treated as part payment and deducted. But since the entire note has been otherwise paid, or its obligation extinguished, that provision is no longer in force, and the debt in question remains to be satisfied without regard to the note.

In considering the other ground, it becomes necessary to advert to the 5th and 35th sections of the statute. The former relates to payments, and transactions in the nature of payment, made by the trustee on account of the liability for which he is sought to be charged; the latter to independent claims in his favor against the defendant. And as the former section denies to the trustee the benefit of any such payment, made after service of the process upon him, (unless made in ignorance of that fact,) it evidently requires that payments claimed should appear to have been made before service of the process, or without knowledge of it. Otherwise the disclosure, or proof, will not make a case within the express requirement of that section. But in regard to distinct and independent claims of the trustee the language of the statute is very different. The 35th section enacts, that " every trustee shall be allowed to re-'tain or deduct out of the goods, effects and credits in his hands, all 'his demands founded on contract, express or implied, against the ' principal defendant, and shall be liable for the balance only, after

'the final judgment in the suit." It has been held by the court, that this section applies only to cases, where there is an express or implied contract between the trustee and principal defendant, arrising in the usual course of business ; that the object of the statute of 1845 was, to extend the trustee process to claims merely equitable, and such as can only be enforced in a court of chancery ; and that a person summoned as trustee cannot be held as such for money, which he has received of the principal defendant as *usury ;* *Barker* v. *Graves,* Addison Co., Jan. T. 1847 ; nor for money received as a compensation for raising money for the defendant, at a time of pressing emergency ; *Fish* v. *Nichols,* Tr., Ibid.

' all such demands between him and the principal defendant are ad-
' justed." Here is no mention of the time when the process is served,
and doubtless for the reason,that it might frequently work injustice
to the trustee, to disallow every claim, which should accrue to him
pending the process. Hence it is seen, that this demand of the trus-
tees comes literally within the protection of the statute. And un-
less it arose out of voluntary advances made to the defendant after
service of the process, or from other transactions intended to ren-
der the creditor's attachment less beneficial to him, they must be
entitled to retain for it. But as any thing of that kind would be a
virtual fraud, both upon the statute and the creditor, it should be
proved upon the trustees, and ought not to be presumed. If the
creditor deemed it important to ascertain when or how the demand
accrued, he could have questioned the trustees upon that point.
Inquiry with the same view might also have been directed by the
court. It is now too late, however, for any such amendment of the
case. The demand is now to be allowed by reversing the judg-
ment below, or wholly disallowed by affirming it. And since it is
not shown to be fraudulent as against the rights of the plaintiffs, we
think it safer to abide by the words of the statute, than to presume
that either its letter or spirit has been wilfully violated.

Judgment of county court reversed, and judgment that the trus-
tees are liable for the balance of the $116,00 after deducting their
demand of $66,49, against the defendant.