SOLOMON DOWNER *v.* DANIEL TARBELL, JR., and *Trustee* DANIEL KELSEY. JOHN LONGEE, *Claimant.*

*Trustee process. Promissory note.*

K. executed a note to T., the consideration of which was T's agreement to pay an equal amount of K's debts to his creditors. T. transferred the note to K. H. & Co., as collateral security for a debt due them from him, and they immediately gave K. notice of the transfer. The plaintiff subsequently sued T. and trusteed K. Afterwards T. fraudulently procured the note from K. H. & Co. without paying their claim, and transferred it for a full consideration to L., the claimant, who took it supposing it to be free from any lien whatever, and notified K. of its transfer to him. When K. made his disclosure in the trustee suit, T. had not paid all the former's debts which he had agreed to pay, but he did so before the case was disposed of in the county court. *Held,* that the trustee was chargeable for the balance of the note, after deducting K. H. & Co's claim against T.

TRUSTEE PROCESS. The facts in the case are sufficiently stated in the opinion of the court.

The county court at the May term, 1858, Redfield Ch. J. presiding, adjudged the trustee liable for the amount of the note in question, after deducting the sum due from Tarbell to Keith, Hyde & Co., to which the claimant excepted.

*Converse & French,* for the claimant.

*Washburn & Marsh,* for the plaintiff.

BARRETT J. The only question to be decided is, whether the claimant is entitled to hold, as against the plaintiff, the note given by Kelsey to Tarbell, and by Tarbell sold and endorsed to the claimant. The rights of Keith, Hyde & Co., as claimants against the plaintiff, have already been adjudicated, and no controversy as yet exists between them and the present claimant touching their respective rights in regard to the note.

A comprehensive summary of the facts is, that Kelsey, the trustee, on the 15th day of March, 1854, gave to Tarbell the note in question payable on demand. The consideration for the note was Tarbell's undertaking to pay an equal amount of debts owing by the trustee to various persons, his creditors. In April, 1854, Tarbell transferred the note to Keith, Hyde & Co., as col-

lateral security for a debt of $787.50, who gave due notice to Kelsey that they held the note.

The process in this suit was served July 17, 1854. In October, 1854, Tarbell, having paid the debt to Keith, Hyde & Co., except about $139, succeeded by means adapted to his purpose, but which operated as a fraud upon them, in getting the note back from them into his own hands, and then transferred it to Longee, the claimant, for full consideration, who took it in good faith, supposing it to be free from any lien by reason of this process.

The commissioner does not find whether the debts which Tarbell had assumed to pay as the consideration of the note, had been paid at the time Kelsey made his disclosure in August, 1855, but does find that the trustee did not understand that any but the debt to Hiram Moor, of about $900, had then been paid. From the final disclosure made by the trustee at the December term, 1857, it appears that all of said debts had been paid, or at least that the trustee had been released from them. In December or January next after the claimant received said note from Tarbell, he notified the trustee that he held the same.

The case of *Fay* v. *Smith*, 25 Vt. 610, seems to have settled the right of the plaintiff to pursue by trustee process the note in the hands of Keith, Hyde & Co., for the excess above the debt for which they were holding the note as security. The general property of the note remained in Tarbell. K., H. & Co. were holding it as a pledge, with an interest in it commensurate with their debt. The right of the plaintiff, created by the service of the trustee process, attached to the debt evidenced by the note, and fastened upon whatever interest Tarbell had in it, in subordination to the right of the holders in pledge. As Tarbell should reduce the debt for which the note was held as security, by so much would the amount of his interest in the note be increased. If, upon full payment of his debt to K., H. & Co., he had received back the note from them, it would then have been in his hands the same as if it had never been pledged to them. The absolute title to it would have been in him, and in no way affected by the fact of its having been pledged. If he had continued to hold the note down to the time of the judgment in the county court, it can hardly be questioned that it would have been subjec-

ted to this process for its full amount, unless the trustee himself had shown matter to prevent such a result. But the trustee is not interposing between the plaintiff and the debtor.

In whose right does the claimant stand before the court in reference to the note ? He received it of Tarbell, subject in Tarbell's hands to the pending trustee process. He was informed of this process before he took it of Tarbell, but was led to suppose that by reason of the note being in the hands of K. H. & Co. at the time of service, the process would be ineffectual to hold it. It is needless to discuss how far this would fall within the rule as to ignorance of the law, the facts being known, or how far the claimant would be exposed to the operation of the doctrine of *lis pendens*. If he had received the note before this process had been served on Kelsey, and had given due notice that he was the holder of it he would now stand on clear ground. If he had received the note from K., H. & Co. it might be plausibly argued, and perhaps successfully, that he was holding it with the full effect and benefit of the notice given by them of the transfer by Tarbell to them, and the case of *Britton* v. *Preston*, 9 Vt. 257, might have given countenance to this view. And still we do not design to intimate that it might not have been a question of some difficulty whether that notice would inure to a subsequent holder to any greater extent than it would have been operative in favor of K., H. & Co. under the circumstances, and in reference to the purposes for which they held the note.

It seems to us that Mr. Longee, the claimant, took the note burdened with the lien or right to which it was at the time subject in the hands of Tarbell, and that it still remains thus burdened. If, when Tarbell received back the note from K., H. & Co., the plaintiff's right by virtue of this trustee process attached upon it to the full extent of Tarbell's interest in it, we are unable to see how anything that Tarbell should thereafter do with, or in reference to, the note, could affect the plaintiff's right acquired by the service and pendency of this process.

The learned counsel for the claimant makes a point that the plaintiff is not entitled to hold of the note an amount beyond what had been paid by Tarbell on the debts of the trustee at the time of the disclosure before the commissioner in August, 1855,

Downer *v.* Tarbell and Trustee et al.

that the disclosure made at the December term, 1857, is not to be treated as a disclosure, and that the rights of the parties must stand upon the facts set forth in the disclosure and commissioner's report made in August, 1855, and that at that time Tarbell had paid only $900 of what he was to pay as the consideration of said note, As to this, it may in the first place be remarked, that as the trustee is not contesting his liability on the note, it does not seem to be material whether we treat that answer to the interrogatory at the December term, 1857, as being a *disclosure* or not. The trial in the county court was proceeding upon the claim made by the claimant. The trustee's disclosures and the commissioner's report were not a proceeding to which the claimant was a party. Their only purpose was to fix the trustee's liability to pay the note. If they were used on the hearing between the plaintiff and claimant, they were so used by consent, and merely as evidence of facts properly in issue, that affected the relative rights of the plaintiff and claimant.

The fact shown by that answer was that the debts had been paid by Tarbell that he undertook to pay as the consideration of the note. But the exceptions show that "it was conceded that Tarbell had paid the debts which constituted the consideration of the note in question." This fact being thus conceded rendered that answer of no importance for any purpose in the trial of the claimant's claim. It was the legal effect of the fact thus conceded that the court had to consider.

In the next place, it is difficult to see how this claimant can legitimately raise any question as to the consideration upon which the note was given. The trustee acknowledges the note to be valid against him. The only question is, who is entitled to the pay—Downer by virtue of his trustee process, or Longee by virtue of the transfer of the note to him by Tarbell? The determination of this question cannot depend upon, or be affected by what has taken place between the original parties to the note. In this controversy both the plaintiff and the claimant claim from the same source. The question is, which has the prior and better right.

It cannot affect the right of the plaintiff accruing in virtue of his trustee process, that Tarbell and Kelsey represented to the

Downer *v.* Tarbell and Trustee et al.

claimant that the note was due, and that it was unaffected by this trustee process. The plaintiff was not in any way participating in such representations. Any fraud, or misinformation, or incorrect opinion that they may have brought to bear on the claimant, and thereby have induced him to take the note and pay full consideration for it, does not affect the plaintiff's right, nor does it place the claimant in any position of advantage as against the plaintiff.

In any view we are able to take of the case, we think the judgment of the county court is correct, and it is therefore affirmed.