GEORGE A. MORSE *v.* HOWARD C. STEVENS AND TRUSTEE.

November Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 5, 1922.

*Trustee Process—Mere Securities for Money Cannot Be Held.*

One cannot be charged as trustee on the ground of having in his hands mere securities for money (in this case a note) belonging to the principal debtor.

ACTION OF CONTRACT. Heard on an agreed statement of facts in vacation after the June Term, 1920, Lamoille County, *Chase,* J., presiding. Judgment for the plaintiff against the

principal defendant, and judgment discharging the trustee with costs. From the last judgment the plaintiff excepted. The opinion states the case.

*F. G. Fleetwood* for the plaintiff.

*Charles H. Adams* for the claimant.

SLACK, J. The only question to be determined in this case is whether the judgment discharging the trustee should be sustained.

The case was heard below on an agreed statement of facts. The facts material to our inquiry are these: At the time the writ was served upon the trustee, October 24, 1919, the defendant was owing him between $1,700 and $1,800 on a note defendant gave him the March previous, and the trustee then held as collateral security for the payment of that note certain other notes that belonged to defendant, amounting to $7,500, which notes were signed by one Villeneuve and were payable to defendant or bearer. These notes were transferred by defendant to the trustee for the purpose aforesaid, and notice of such transfer was given by the trustee to Villeneuve before the writ was served.

The plaintiff contends that the balance of the Villeneuve notes not required to secure the payment of the note given by the defendant to the trustee is "goods, effects," and "credits" in the hands of the trustee belonging to the defendant, within the meaning of G. L. 1937. The language of this statute is not broader in terms than the language of the statute which has been in force since 1797. Our first trustee law, approved October 31, 1797, provided, "that if any person or persons, shall have in his, her or their possession, any money, goods, chattels, rights or credits," etc. The phraseology was changed to the present form, "goods, effects or credits," in the revision of 1839. R. S. Ch. 29, Sec. 4. An examination of the cases where these statutes have been construed shows conclusively that the balance of the Villeneuve notes not required to secure the payment of the note given by defendant to the trustee would constitute goods, effects, and credits in the hands of Villeneuve for which he would be chargeable as trustee of the defendant. *Perrin* v. *Russell,* 33 Vt. 44; *Downer* v. *Tarbell,* 32 Vt. 22; *Fay* v. *Smith,* 25 Vt. 610.

They make it equally clear, we think; that on the facts appearing in this case, the trustee was properly discharged. One cannot be charged as trustee on the ground of having in his hands mere securities for money belonging to the principal debtor. *Sargeant v. Leland,* 2 Vt. 277; *Hitchcock v. Egerton,* 8 Vt. 202; *Denison v. Petrie,* 18 Vt. 42; *Scofield v. White,* 29 Vt. 330; *Van Amee v. Jackson,* 35 Vt. 173; *Stickney v. Crane,* 35 Vt. 89; *Stevens v. Kirk,* 37 Vt. 204.

Provisions similar to those prescribed by G. L. 1981 to 1989, for enforcing a judgment against one held chargeable as trustee by reason of having in his hands personal property other than money, belonging to the principal defendant, were available when the cases cited were decided. R. S. Ch. 29, §§ 20 to 28; Revision 1797 p. 502, § 5, pars. 2 and 4. The Court had these provisions in mind in *Sargeant v. Leland* when it said: "When the trustee is neither in the possession of money belonging to the principal defendant, nor indebted to him, but has goods and chattels of the principal debtor in his hands, execution is to issue against such goods and chattels in the possession of the trustee. As a note or chose in action cannot be taken on execution, it is not liable to attachment by this process; and a person, therefore, in possession of a note belonging to another, unless he has received the money upon it, or made himself a debtor for it in some other way, cannot be adjudged a trustee." In *Denison v. Petrie,* notes signed by Woodward and payable to Petrie were left by the latter with English to collect. Suit was brought against Petrie, and English as trustee. In the course of its opinion holding English not chargeable the Court said: "The notes were but evidence of a debt due from Woodward to Petrie, and could not have been proceeded with as specific property under an execution against Petrie. It was only when English should receive a payment upon the notes that he could become the debtor or trustee of any one for the purposes of the trustee process."

It seems needless to consider this question further. Manifestly the Villeneuve notes in the hands of the trustee are not goods, effects, or credits belonging to the principal debtor within the meaning of the statute relating to trustee process.

The provisions of G. L. 1938, are not applicable to the case before us. The obvious purpose of that statute is to make clear

the conditions under which the maker of negotiable paper may be held chargeable as trustee of the payee. The Legislature was undoubtedly prompted to pass No.. 8, Acts of 1841, now part of G. L. 1938, by the situation presented in *Camp* v. *Scott*, 14 Vt. 387, a case pending in our courts at the time the Act of 1841 was passed. There the defendant owned a demand note signed by Clark, and transferred it to a third person after the service of the writ. Clark's liability as trustee turned on the question of whether the note was overdue when transferred. With the liability of the maker of negotiable paper to be held as trustee of the payee depending not only upon the question of whether such paper had been transferred but whether it was overdue when transferred, and the evidence on both these questions being exclusively under the control of the payee and transferee, as it might be, the door was wide open to all sorts of schemes and fraudulent practices. The Legislature realizing the mischief that might arise took steps to remedy the situation by passing the act referred to, which provides: "That all negotiable paper, whether under or overdue, may be attached by, and the same shall be subject to the operation of the trustee process, unless it shall appear that the same has been negotiated, and notice thereof given to the maker or indorser before the service of the trustee process on him." To this act the Legislature of 1852 added a provision relating to negotiable paper discounted by banks. The provisions of these two acts, the latter having been changed somewhat, constitute G. L. 1938. They were not intended to, nor do they, apply to negotiable paper held by an indorsee as collateral security.

*Judgment affirmed.*